**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **Case No. 2:15-CR-080** |
| **Plaintiff,** | : | **Case No. 2:14-CR-127** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| **ROBERT B. LEDBETTER,** *et al.* | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

This matter comes before the Court on Defendants' motions to dismiss various unindicted overt acts related to the affairs of the alleged RICO enterprise[1] and Defendants' motions to dismiss certain murder counts due to the Government's purported failure to state an offense.[2] Defendants argue that the Government's anticipated use of evidence beyond the overt acts specified in the Superseding Indictment violates the Fifth and Sixth Amendments. Defendants further argue that the Government has failed to state an offense with respect to several murder counts under 18 U.S.C. § 924(j) due to statute-of-limitations problems with the underlying offenses on which those counts are based. Defendants, however, have misconstrued the required elements of a RICO conspiracy as well as the interplay between § 924(j) and the relevant statutes of limitation. Accordingly, the Court **DENIES** Defendants' motions to dismiss.

---

[1] Robert B. Ledbetter (Doc. 633), Lance A. Green (Doc. 637), Allen L. Wright (Doc. 638), Tysin L. Gordon (Doc. 626), Christopher A. Harris (Doc. 630), Robert L. Wilson III (Doc. 642), Deounte Ussury (Doc. 631), Thomas E. Coates (Doc. 634), and Ishmael Bowers (Doc. 643), moved to dismiss, or to preclude evidence of, various unindicted overt acts related to the affairs of the Short North Posse. The Government opposed Defendants' motions to dismiss these unindicted over acts. (Doc. 656).

[2] Robert B. Ledbetter (Doc. 665), Christopher A. Harris (Doc. 663), Deounte Ussury (Doc. 674), and Clifford L. Robinson (Doc. 662) also moved to dismiss various counts due to the Government's purported failure to state an offense. The Government likewise opposed Defendants' motions. (Doc. 684).

## I. BACKGROUND

On June 23, 2014, a federal grand jury returned a twenty-five count Indictment in Case Number 2:14-cr-127, charging seventeen defendants with a number of violations under federal law connected to the defendants' alleged involvement in the Short North Posse, an alleged criminal organization in the Short North area of Columbus, Ohio.  (Doc. 14).  The first count in the Indictment alleged the existence of a RICO conspiracy from 2005 until 2014, in which the enterprise, the Short North Posse, committed murder, attempted murder and robbery, distributed and possessed with the intent to distribute controlled substances, tampered with witnesses, and committed acts of extortion, robbery, and retaliation against witnesses.  The remaining counts included eleven counts of murder in aid of racketeering, one count of murder through the use of a firearm during and in relation to a crime of violence, four counts of murder through the use of a firearm during and in relation to a drug trafficking crime, one count of conspiracy to murder a witness, one count of use of a firearm during and in relation to a crime of violence, four counts of being a felon in possession of a firearm, one count of possession with intent to distribute cocaine, and one count of possession with intent to distribute heroin.

On October 20, 2014, the grand jury returned a Superseding Indictment adding three new defendants and thirteen counts, bringing the total to twenty defendants and thirty-eight counts. (Doc. 300).  These thirteen new counts included one count of attempted possession with intent to distribute cocaine, five counts of use of a firearm during and in relation to a drug trafficking crime, murder in aid of racketeering, four counts of possession with the intent to distribute marijuana, one count of attempted possession with intent to distribute marijuana, and one count of witness tampering.  The three new defendants were Andre M. Brown, Johnathan Holt, and Christopher V. Wharton.

2

On April 2, 2015, the grand jury returned another Indictment that was later assigned as a separate case—Case Number 2:15-cr-080. The 2015 Indictment named four defendants (Robert B. Ledbetter, Christopher A. Harris, Rashad A. Liston, and Deounte Ussury), all of whom were charged previously in the Superseding Indictment in Case Number 2:14-cr-127. The 2015 Indictment also included two new counts: one for murder in aid of racketeering and one for murder through the use of a firearm during and in relation to a drug trafficking crime—both related to the murder of Marschell Brumfield, Jr. in 2007. Due to the similarity of the charges in both cases and the fact that all four defendants also were charged in Count One of the Superseding Indictment for their role in the RICO conspiracy, this Court joined Case Number 2:15-cr-080 with Case Number 2:14-cr-127 under Federal Rule of Criminal Procedure 13. (Doc. 595).

In total, fourteen defendants are charged in the RICO conspiracy count, which includes 112 overt acts allegedly committed in furtherance of the conspiracy. The Government, moreover, has reserved the right to adduce evidence of any overt act about which it has evidence, regardless of whether the Superseding Indictment specifically identifies that overt act. The six defendants who do not face the conspiracy charge are all charged with at least one count of murder in aid of racketeering relating to their membership and/or association with the Short North Posse, among other charges. Under the Superseding Indictment in Case Number 2:14-cr-127 and the 2015 Indictment in Case Number 2:15-cr-080, the defendants collectively face a total of forty counts. Although fourteen defendants initially faced a potential capital prosecution, the Government recently informed the Court and the defendants of its intent not to seek the death penalty for any of the defendants. (Doc. 563).

As relevant here, the Government has filed two notices of intent to rely on evidence beyond the 112 overt acts specified in the Superseding Indictment. (*See* Docs. 223 and 565). In its first notice of intent, the Government explained that the overt acts listed in the original Indictment do not constitute "an exhaustive list of the evidence that the government intends to rely on to prove its case." (Doc. 223). Instead, "[t]he overt acts alleged in the [original] Indictment serve only as a general narrative of some of the events that the government intends to rely on to prove the existence of the [RICO] enterprise, the membership in or association with the enterprise[,] and the conspiracy to commit the predicate offenses." (*Id.*) In its second notice of intent, the Government stated that, in addition to the overt acts alleged in the Superseding Indictment, the United States had identified other "reported crimes perpetrated by the enterprise that it intends to rely on as predicate offenses and acts relating to the affairs of the enterprise." (Doc. 565). The Government's second notice then listed thirteen such "reported" crimes involving eight of the defendants. (*Id.*) The Government also reserved the right to rely on other "'unreported' crimes [and] all historical evidence relating [to] the existence of the enterprise, the membership in or association with the enterprise[,] and [the] conspiracy to commit the predicate offenses as alleged in Count One, paragraph twenty-two of the Superseding Indictment (e.g. Robbery, Extortion, Witness Tampering, Murder[,] and Drug Trafficking)." (*Id.*)

Defendants now argue that the Fifth and Sixth Amendments bar the Government's anticipated use of evidence beyond the overt acts specified in the Superseding Indictment. As to the Fifth Amendment, Defendants contend that the Presentment Clause requires notice of all essential elements of the charged offense and that, by signaling its intent to rely on evidence of "unindicted overt acts," the Government has constructively amended the Superseding Indictment. Defendants argue that this deprives them of their right to a grand jury presentment.

4

As to the Sixth Amendment, Defendants argue that under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 133 S. Ct. 2151 (2013), any fact that is "essential" to punishment constitutes an element of the offense that must be included in the indictment and submitted to a jury for proof beyond a reasonable doubt.  Defendants contend that, by signaling its intent to rely on evidence of "unindicted overt acts," the Government seeks to present facts to the petit jury that were not screened by a grand jury—facts that, in Defendants' minds, are "essential" to punishment.  This, Defendants argue, runs afoul of the Constitution as interpreted by both *Apprendi* and *Alleyne*.

Finally, Defendants argue that the Government has failed to state an offense with respect to several murder counts under 18 U.S.C. § 924(j) due to statute-of-limitations problems with the underlying offenses on which those murder counts are based.  Defendants' argument is two-fold.  *First*, Defendants argue that to be found guilty of murder under § 924(j), the Government must show that Defendants committed an underlying offense under § 924(c)—in this case, either a Hobbs Act robbery or one of several drug trafficking crimes.  *See* 18 U.S.C. § 924(c), (j).  *Second*, Defendants argue that because the indictments were returned after the five-year statute of limitations for the *underlying offenses* expired, *see* 18 U.S.C. § 3282(a), the Government may no longer prosecute them for the *charged offense* of murder under § 924(j).  Defendants press this argument despite the Court's prior Opinion and Order concluding that "not one" of the murder counts under § 924(j) is time-barred under the relevant statute of limitations.  (Doc. 682).  The Court previously found that, because murders under § 924(j) are "punishable by death" within the meaning of 18 U.S.C. § 3281, "no limitations period applies to bar the instant prosecution."  (*Id.*)  Defendants thus apply a different gloss to their prior unsuccessful statute-of-limitations defense.

5

## II.  STANDARD OF REVIEW

The Fifth Amendment provides, in relevant part, that "[n]o person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."  U.S. Const. amend. V.  This provision "guarantees that an accused be tried only on those offenses presented in an indictment and returned by a grand jury."  *United States v. Manning*, 142 F.3d 336, 339 (6th Cir. 1998).  Even when the government properly presents a criminal charge to a grand jury, the government (or the Court) can run afoul of the Presentment Clause at trial by modifying the indictment through a constructive amendment or variance.  *See id.*

A constructive amendment occurs "when the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of [the] offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment."  *Id.* (quotation omitted).  Constructive amendments are considered per se prejudicial and therefore constitute reversible error.  *United States v. Nixon*, 694 F.3d 623, 637 (6th Cir. 2012).  A variance, on the other hand, "occurs when the charging terms are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment."  *Id.* (quotation omitted).  While a variance does not constitute reversible error "unless the defendant demonstrates prejudice," some variances, if "serious enough," *become* constructive amendments.  *Id.* (quotation omitted).  A variance crosses the line and becomes a constructive amendment "only when the variance creates a substantial likelihood that a defendant may have been convicted of an offense other than that charged by the grand jury."  *Id.* (quotation omitted).  Defendants bear the burden of proving that a variance has crossed this line and become a constructive amendment to the indictment, *see id.*, which is a legal question the Court reviews de novo, *Manning*, 142 F.3d at 339.

The Sixth Amendment, in turn, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . and to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. These jury trial and notice provisions guarantee that "any facts [other than a prior conviction] that increase the prescribed range of penalties to which a criminal defendant is exposed" constitute elements of the offense that must be included in the indictment and submitted to the jury for proof beyond a reasonable doubt. *See Alleyne*, 133 S. Ct. at 2160, 2161 (quoting *Apprendi*, 530 U.S. at 490). Thus, under the Sixth Amendment, "any facts [other than a prior conviction] that increase either the statutory maximum or minimum" sentence that may be imposed must be charged in the indictment and found by a jury beyond a reasonable doubt. *Id.* at 2161 & n.2; *see also United States v. Hackett*, 762 F.3d 493, 502 (6th Cir. 2014). This Court reviews de novo whether, as a matter of law, "an indictment adequately alleges the elements of the offense." *See United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 177 (6th Cir. 1992).

Finally, legislatively enacted statutes of limitation provide "the primary guarantee against bringing overly stale criminal charges." *United States v. Lovasco*, 431 U.S. 783, 789 (1977) (quotation omitted). Statutes of limitation represent legislative balancing between the interests of society and the accused in administering and receiving justice. *United States v. Marion*, 404 U.S. 307, 322 (1971). These statutes "protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time" and "minimize the danger of official punishment because of acts in the far-distant past." *Id.* at 323 (quotation omitted). The applicability of a statute of limitations is a question of statutory interpretation, which this Court reviews de novo. *See United States v. Blanchard*, 618 F.3d 562, 567 (6th Cir. 2010).

## III.  ANALYSIS

Defendants argue that the Government's anticipated use of evidence beyond the overt acts specified in the Superseding Indictment violates the Presentment Clause of the Fifth Amendment and their Sixth Amendment right to a jury determination of any fact that increases the statutory minimum or maximum penalty that may be imposed.  Defendants further argue that the Government has failed to state an offense with respect to several murder counts under 18 U.S.C. § 924(j).  The Court addresses and rejects each argument in turn.

### A.  Undicted Overt Acts

Nine of the defendants moved to dismiss, or to preclude evidence of, various unindicted overt acts related to the affairs of the Short North Posse.[3]  Defendants contend that "the Government seeks to expand the evidence upon which the petit jury may conclude that [they] conspired to commit a RICO offense by allowing the petit jury to rely on evidence of predicate acts not charged in the grand jury's indictment."  (*See, e.g.*, Doc. 633).  Defendants argue that this constitutes a "constructive amendment of the indictment," which is per se prejudicial and constitutes reversible error.  (*Id.*)  Whether examined under the Presentment Clause of the Fifth Amendment or *Apprendi* and *Alleyne*, Defendants argue that the Government cannot "add" predicate offenses or overt acts "not specifically named" in the original Indictment or in the Superseding Indictment.  (*See, e.g.*, Doc. 626).  This Court disagrees.

---

[3] Robert. B. Ledbetter (Doc. 633), Lance A. Green (Doc. 637), Tysin L. Gordon (Doc. 626), Christopher A. Harris (Doc. 630), and Thomas E. Coates (Doc. 634), all moved in Case Number 2:14-cr-127 to dismiss, or to preclude evidence of, the unindicted overt acts while providing reasoned arguments in support.  Ledbetter and Harris similarly moved to dismiss, or to preclude evidence of, the unindicted overt acts in Case Number 2:15-cr-080.  (Dos. 19 and 20, respectively).

In the interest of judicial efficiency, Allen L. Wright (Doc. 638), Robert L. Wilson III (Doc. 642), Deounte Ussury (Doc. 631), and Ishmael Bowers (Doc. 643), moved to join their co-defendants' pleadings.  The Court previously granted these motions to join with respect to Wright, Wilson III, and Bowers (*See* Doc. 682), and hereby grants Ussury's motion to join his co-defendants' pleadings as well.  The Court will construe these motions in like manner with respect to the unindicted overt acts.

*1. The Government's Notices of Intent Do Not Violate the Fifth Amendment.*

The Government's notices of intent to rely on evidence beyond the overt acts listed in the Superseding Indictment to prove Count One (RICO conspiracy) do not violate the Fifth Amendment. The nature and essential elements of a RICO conspiracy charge compel this result. Defendants conflate the essential elements of a substantive RICO charge with a charge of RICO conspiracy. Once this distinction is laid bare, the Government's intent to rely on evidence of "unindicted overt acts" poses no Fifth Amendment problem.

### *a. The Government Need Not Prove Specific "Predicate Acts" as an Essential Element.*

Count One from the Superseding Indictment charges only RICO conspiracy under 18 U.S.C. § 1962(d)—not a substantive RICO offense under § 1962(a)-(c). This distinction matters because, unlike subsections (a) through (c) of § 1962, which are aimed at substantive RICO offenses, subsection (d) focuses only on the unlawful agreement to commit one of the substantive offenses identified in the preceding subsections. *See, e.g.*, *United States v. Fowler*, 535 F.3d 408, 421 (6th Cir. 2008) ("[T]he two offenses are plainly different."). In this case, the Superseding Indictment alleges that Defendants conspired to violate § 1962(c). (Doc. 300).

A conviction for a *substantive* RICO violation under § 1962(c)—which is *not* alleged here—requires the government to prove, among other elements, that the defendant committed two or more "predicate acts" of racketeering, which are enumerated in § 1961(1). *Salinas v. United States*, 522 U.S. 52, 62 (1997) (citing 18 U.S.C. § 1961(5)). By contrast, a conviction for *conspiracy* to violate § 1962(c) requires the government to prove only "that the defendant agreed to participate in the conduct of the enterprise's affairs through a pattern of racketeering activity,"—*i.e.*, to prove "an *agreement* to commit two predicate acts." *United States v. Joseph*, 835 F.2d 1149, 1151-52 (6th Cir. 1987) (emphasis added).

Because a conspiracy charge punishes only the *agreement* to commit a substantive RICO offense, the government need not prove that the defendant committed "*any* predicate acts" of racketeering, that the defendant "agreed to commit two predicate acts himself," or even that any predicate acts ultimately were committed.  *See Fowler*, 535 F.3d at 420-21 (quotation omitted); *United States v. Saadey*, 393 F.3d 669, 676 (6th Cir. 2005) (same).  Instead, "the government need only prove that [the defendant] agreed that some member(s) of the conspiracy would commit two or more predicate acts, not that the defendant himself committed or agreed to commit such acts."  *United States v. Tello*, 687 F.3d 785, 793 (7th Cir. 2012).

### b. Consequently, the Government Need Not Allege Specific "Predicate Acts."

Because the government need not prove specific predicate acts at trial as an essential element of a RICO conspiracy charge, the government need not allege specific predicate acts in an indictment either.  True enough, "requiring proof of a predicate act at trial and requiring the inclusion of such an act in the Indictment are two different issues, but it is difficult to see how one would justify requiring a predicate act in the latter situation and not the former."  *United States v. Dimora*, 829 F. Supp. 2d 574, 586 (N.D. Ohio 2011).  As such, several courts have held that an indictment under § 1962(d) need not allege the "specific predicate acts" that defendants conspired to commit.  *United States v. Glecier*, 923 F.2d 496, 500-01 (7th Cir. 1991); *United States v. Applins*, 637 F.3d 59, 81 (11th Cir. 2011) ("[A] RICO conspiracy charge need not specify the predicate or racketeering acts that the defendants agreed would be committed . . . ."); *United States v. Phillips*, 874 F.2d 123, 129-30 (3d Cir. 1989) (holding that where RICO conspiracy count generally identified racketeering acts as acts of bribery and extortion, the government "can rely on any act of bribery and extortion, so long as that act occurred within the time frame of the conspiracy and was established by proof[] at the trial").

Although the Sixth Circuit has not ruled on whether an indictment may omit a description of the "predicate acts" that the defendants contemplated, at least two lower courts within this Circuit have followed the lead of *Glecier*, *Applins*, and related cases. *See United States v. Norwood*, No. 12-CR-20287, 2013 WL 5965328, at *8 (E.D. Mich. Nov. 8, 2013); *Dimora*, 829 F. Supp. 2d at 586. This Court follows suit in holding that an indictment under § 1962(d) need not allege the "specific predicate acts" that the defendant agreed someone would commit. Instead, the indictment need only allege "that the defendant[] agreed to the commission of multiple violations of a specific statutory provision that qualifies as RICO racketeering activity." *Dimora*, 829 F. Supp. 2d at 586 (quoting *Applins*, 637 F.3d at 81). Put differently, the indictment need only allege the "*types* of crimes that the conspiracy agreed to commit and that would constitute a 'pattern of racketeering activity' if carried out." *Id.* (emphasis added).

### c. The Superseding Indictment Adequately Alleged a Pattern of Racketeering Activity.

Here, the Superseding Indictment adequately alleged a pattern of racketeering activity. In paragraph twenty-two, the Government listed five *types* of predicate acts and the specific statutory provisions that correspond to those crimes while alleging that "each defendant agreed that a conspirator would commit at least two" of those predicate acts "in the conduct of the affairs of the enterprise." (Doc. 300). Those predicate acts included robbery and extortion under federal law; tampering with a witness, victim, or informant; retaliation against a witness, victim, or informant; murder and robbery under state law; and several federal drug trafficking crimes. (*Id.*) In paragraphs three through eight, the Government listed the purposes of the Short North Posse for which those crimes were carried out. (*Id.*) And in paragraph twenty-two, the Government listed the general timeframe of the alleged conspiracy as beginning "in or about 2005" and continuing thereafter until the date of the original Indictment in June 2014. (*Id.*)

11

These allegations, "accepted as true, were sufficient to establish that [Defendants] knowingly agreed to conduct the affairs of the [Short North Posse] through a pattern of racketeering activity." *See Tello*, 687 F.3d at 795. As the Seventh Circuit explained in a case involving nearly identical language from an indictment, "[f]urther detail was unnecessary: the indictment did not need to identify the specific predicate acts that [Defendants] agreed would be committed, nor was it necessary for the government to prove that any of the racketeering acts referenced in [paragraph twenty-two] occurred at a particular time or place." *See id.*

### d. The Government Is Not Precluded from Relying on Evidence of Unindicted Overt Acts.

Neither § 1962(d) nor the cases interpreting that subsection require proof of a specific predicate act or *any* overt act taken in furtherance of the conspiracy. *Fowler*, 535 F.3d at 421. As such, "any allegation as to overt acts, including predicate acts of racketeering[] that [Defendants] may have committed . . . *would constitute surplusage rather than an essential element* of the charged conspiracy." *Tello*, 687 F.3d at 795-96 (emphasis added); *see also United States v. Luong*, No. CR S-96-0350 WBS, 2006 WL 224039, at *2 (E.D. Cal. Jan. 27, 2006) ("[T]he inclusion of a section identifying overt acts in each [conspiracy] count has no bearing on the validity of the indictment."). These "surplus allegations thus would not support a later charge of constructive amendment based on a divergence between the acts alleged in the indictment and the acts, if any, [proven at trial]." *See Tello*, 687 F.3d at 796; *see also United States v. Smith*, 27 F. App'x 577, 581 (6th Cir. 2001) (finding no variance or constructive amendment where evidence adduced at trial, though different from indictment, did not involve an "essential element" of the offense); *United States v. Wood*, 877 F.2d 477, 481 (6th Cir. 1989) (finding no variance between indictment and proof offered at trial where "that portion of the indictment . . . being a non-essential element of the crime . . . was mere surplusage").

12

Indeed, "the inclusion of an overt act in an indictment does not preclude the Government from proving other overt acts so long as they are in furtherance of the conspiracy and there is no prejudice to the Defendant"—*even under the more general federal conspiracy statute*, which *does* require proof of an overt act. *United States v. Abdi*, 498 F. Supp. 2d 1048, 1083 (S.D. Ohio 2007); *see also United States v. Frank*, 156 F.3d 332, 337 (2d Cir. 1998) (finding no constructive amendment due to "the well-established rule of this and other circuits that the overt act element of a conspiracy charge [under 18 U.S.C. § 371] may be satisfied by an overt act that is not specified in the indictment, at least so long [as] there is no prejudice to the defendant"); *United States v. Stone*, 323 F. Supp. 2d 886, 893 (E.D. Tenn. 2004) (explaining that the jury is not limited to considering only those overt acts alleged in the indictment, but also may consider evidence of overt acts presented at trial that fit within the scope of the conspiracy).

In essence, "as long as defendant[s] [are] 'given notice of the core of criminality to be proven at trial,'" courts "afford[] the prosecution 'significant flexibility' to prove the conspiracy's operation through both unalleged and alleged overt acts." *United States v. Salmonese*, 352 F.3d 608, 620-21 (2d Cir. 2003) (quotation omitted); *United States v. Lewis*, 759 F.2d 1316, 1344 (8th Cir. 1985) (finding no constitutional violation where government introduced evidence of unindicted overt acts at trial; "[I]n conspiracy cases, the government is not limited in its proof to establishing the overt acts specified in the indictment."); *United States v. Kenny*, 462 F.2d 1205, 1214 (3d Cir. 1982) (holding government was not required to allege every violation of law which occurred as a result of ongoing conspiracy where some violations were not known at time of indictment); *cf. United States v. Kuehne*, 547 F.3d 667, 686-87 (6th Cir. 2008) ("The presentation of additional evidence to substantiate charged offenses, however, does not constitute facts materially different from those charged in the indictment.").

Here, the Government provided notice of the "core of criminality to be proven at trial" through a detailed description of the alleged RICO enterprise, its members and affiliates, its purposes, its means and methods of operation, its timeframe of operation, the nature of the conspiracy and the types of predicate acts the co-conspirators purportedly agreed to, and 112 specific overt acts allegedly committed in furtherance of the conspiracy. (Doc. 300). Moreover, the unindicted overt acts the Government seeks to rely on at trial fit within the scope of the alleged conspiracy as outlined in the Superseding Indictment. (*See* Doc. 565). The Government has not, for instance, alleged new *types* of predicate acts that Defendants allegedly agreed the enterprise would commit, nor has the Government sought to broaden any other essential elements of the RICO conspiracy charge. (*See id.*) Given that Defendants learned of the Government's intent to rely on these unindicted overt acts nearly a year before the first scheduled trial commences in this case, the Court finds no prejudice. Accordingly, "this Court will not preclude the Government from presenting evidence of other overt acts to prove Count One," at least with respect to the challenged notices of intent. *Abdi*, 498 F. Supp. 2d at 1083.

### 2. The Government's Notices of Intent Do Not Violate the Sixth Amendment.

Likewise, the Government's notices of intent do not violate the Sixth Amendment as interpreted by *Apprendi* or *Alleyne*—at least not yet. Recall that the Sixth Amendment requires that "any fact that increases the mandatory minimum" or "the prescribed statutory maximum sentence" that may be imposed must be proved to a jury beyond a reasonable doubt. *Alleyne*, 133 S. Ct. at 2155, 2157. As relevant here, a defendant convicted of RICO conspiracy faces a term of imprisonment of up to twenty years. 18 U.S.C. § 1963(a). A defendant whose RICO violation "is based on a racketeering activity for which the maximum penalty includes life imprisonment" can be sentenced to up to a term of life imprisonment. *Id.*

Defendants' arguments fail under any set of circumstances with respect to *Alleyne* because the RICO conspiracy statute does not contain a mandatory minimum prison sentence. *See id.*; *United States v. Cook*, 550 F. App'x 265, 275 (6th Cir. 2014) (finding no error under *Alleyne* where "[n]o statutory mandatory minimum applied to [the defendant's] convictions"). For example, in *Phipps v. United States*, this Court recently agreed that "*Alleyne* is not implicated at all" where a defendant faces "a statutory maximum of 20 years' imprisonment and to no mandatory minimum term of imprisonment" under the relevant statute. No. 2:11-cr-80(1), 2014 WL 951874, at *3 (S.D. Ohio Mar. 11, 2014) (quotation omitted) (Report and Recommendation), *adopted by* 2014 WL 1333191 (S.D. Ohio Apr. 2, 2014). Those are precisely the facts at issue here. Accordingly, "the Sixth Amendment never [comes] into play." *Id.*

Moreover, Defendants' *Apprendi* arguments are premature because no defendant has been convicted or sentenced yet. As the Sixth Circuit has explained, *Apprendi* concerns are not implicated where a defendant is sentenced to less than 20 years' incarceration for a RICO conviction. *United States v. Corrado*, 227 F.3d 528, 542 (6th Cir. 2000) (enhanced Guidelines-sentences for RICO conspiracy convictions did not trigger *Apprendi* because they fell short of twenty-year statutory maximum); *see also, e.g.*, *United States v. Franco*, 484 F.3d 347, 356 (6th Cir. 2007) ("[S]o long as a sentence does not exceed [the] maximum penalty authorized by *statute*, there is no *Apprendi* violation.") (drug trafficking statute); *United States v. Nguyen*, 255 F.3d 1335, 1344 n.13 (11th Cir. 2001) (holding that RICO defendant's sentence "does not run afoul of *Apprendi*" because he "was not sentenced to a term exceeding the statutory maximum" of twenty years). Unless and until the Court sentences one of the defendants to more than twenty years' imprisonment on the RICO conspiracy charge, *Apprendi* simply does not come into play. *Corrado*, 227 F.3d at 542.

Furthermore, *Apprendi* does not foreclose the Court from sentencing Defendants to more than twenty years' imprisonment should the jury return a conviction for the RICO conspiracy. Instead, *Apprendi* merely mandates that the jury—and not the Court—find, beyond a reasonable doubt, that Defendants' convictions are "based on a racketeering activity for which the maximum penalty includes life imprisonment." 18 U.S.C. § 1963(a). The Superseding Indictment alleges predicate acts of racketeering that authorize life imprisonment as the maximum penalty, including murder under Ohio Revised Code § 2903.02. *See* Ohio Rev. Code § 2929.02(B)(1). Moreover, the Superseding Indictment provides a "Notice of Special Sentencing Allegations as to Count One" that covers all of the defendants charged with murder. (Doc. 300). As such, special jury verdicts for those predicate acts can alleviate most problems under *Apprendi*. *See, e.g.*, *United States v. Nagi*, 541 F. App'x 556, 576 (6th Cir. 2013) (reversing life sentence for RICO conspiracy defendant in the absence of "special findings" as to his participation in life-eligible predicate acts in light of *Apprendi*), *vacated on other grounds*, 134 S. Ct. 2288 (2014); *United States v. Benabe*, 654 F.3d 753, 777 (7th Cir. 2011) (finding special verdicts on four murders included in the indictment "necessary to comply with the requirement of *Apprendi*" where defendants were convicted of RICO conspiracy).

The Government may, however, run into an *Apprendi* problem if it seeks a sentence in excess of twenty years' imprisonment under Count One based *solely* on the unindicted overt acts listed in the notices of intent. *Apprendi* reiterated the Supreme Court's earlier finding that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime *must be charged in an indictment*." 530 U.S. at 476 (emphasis added) (quoting *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999)).

The Court since has doubled-down on this requirement: "In federal prosecutions, such facts *must also be charged in the indictment*." *United States v. Cotton*, 535 U.S. 625, 627 (2002) (emphasis added). Moreover, several lower courts, including the Sixth Circuit, have found constitutional violations where facts that increased the maximum statutory penalty were not alleged in the indictment. *See United States v. Stewart*, 306 F.3d 295, 314 (6th Cir. 2002) (finding *Apprendi* error due, in part, to district court finding facts essential to punishment without those facts being alleged in the indictment); *United States v. Promise*, 255 F.3d 150, 156-57 & n.6 (4th Cir. 2001) (en banc) ("*Apprendi* dictates that in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding . . . [the fact in question] must be treated as an element of [the offense], *i.e.*, *charged in the indictment* and proved to the jury beyond a reasonable doubt." (emphasis added)); *cf. United States v. Knight*, 342 F.3d 697, 710 (7th Cir. 2003) ("*Apprendi* means that the defendants may be subject to a statutorily enhanced sentence . . . only if those facts are charged in the indictment and proven to a jury beyond a reasonable doubt."); *United States v. Solis*, 299 F.3d 420, 449 (5th Cir. 2002) (same).

All that is to say that the Government *might* face a problem under *Apprendi if* a series of events too attenuated to describe here comes to fruition—including trial, admission of evidence of the unindicted overt acts over any evidentiary objections, conviction on Count One, lack of special jury findings on the other *charged* predicate acts of racketeering that carry a potential life sentence, an attempt to use evidence of the unindicted overt acts for an improper sentencing purpose, and so forth. The Court simply cannot forecast how events might unfold, nor is the Court helpless to prevent a constitutional error from occurring if and when the moment arises. Accordingly, at the outset, the Court will not preclude the Government from relying on evidence of the unindicted overt acts based solely on a highly speculative *Apprendi* argument.

## B.  Failure to State an Offense

Four of the defendants moved to dismiss various murder counts under 18 U.S.C. § 924(j) due to the Government's purported failure to state an offense.[4]  Defendants challenge these counts based on their own novel understanding of the relevant statute of limitations.  Because Defendants misconstrue the interplay between § 924(c), § 924(j), and the relevant statute of limitations, the Court disagrees and denies Defendants' motions to dismiss.

Defendants' argument requires several analytical leaps—some warranted, others not. *First*, Defendants assert that to be found guilty of committing murder under § 924(j), the Government must show that the defendants violated § 924(c).  No quarrel there.  The statute itself compels such a result.  18 U.S.C. § 924(j).  *Second*, Defendants argue that a violation of § 924(c) requires proof that they committed an underlying offense which, in this case, is conspiracy to commit robbery or engage in drug trafficking.  Again, so far, so good.  *Id.* § 924(c)(1)(A).  *Third*, Defendants maintain that the five-year statute of limitations applies to the underlying offenses since they are "not capital" offenses.  The Court agrees.  *Id.* § 3282(a). *Finally*, Defendants reason that because the indictments were returned after the five-year limitations period for the *underlying offenses* expired, the Government cannot prosecute them under § 924(j)(1) which, by itself, carries no statute of limitations because it constitutes a capital offense.  *See id.* § 3281; (Doc. 682).  Defendants err in making this final leap.

---

[4] Robert B. Ledbetter moved to dismiss Count Ten from the Superseding Indictment as well as Count Two from the 2015 Indictment in Case Number 2:15-cr-080.  (Docs. 665 and 23, respectively).

Christopher A. Harris moved to dismiss Counts Six, Eight, and Ten from the Superseding Indictment as well as Count Two from the 2015 Indictment in Case Number 2:15-cr-080.  (Docs. 663 and 22, respectively).

Deounte Ussury moved to dismiss Count Eight from the Superseding Indictment as well as Count Two from the 2015 Indictment in Case Number 2:15-cr-080.  (Docs. 674 and 25, respectively).

Clifford L. Robinson moved to dismiss Count Six from the Superseding Indictment.  (Doc. 662).

Prosecutions for firearm murders under 18 U.S.C. § 924(j) carry no statute of limitations, regardless of whether the underlying crime of violence or drug trafficking crime, if charged separately, would be time-barred.  *United States v. Hargrove*, Nos. 03-20192-CM, 12-2180-CM, 2013 WL 4787917, at *4 (D. Kan. Sept. 9, 2013), *aff'd*, 558 F. App'x 807 (10th Cir. 2014); *United States v. Dames*, No. 04 CR 1247, 2007 WL 10332257, at *1 (S.D.N.Y. Mar. 30, 2007). This is so because a violation of § 924(j)(1) is potentially punishable by death, and thus, constitutes a "capital offense" for statute-of-limitations purposes.  18 U.S.C. § 924(j)(1); *id.* § 3281.  Further, as this Court previously stated, "[a]n indictment for any offense *punishable by death* may be found at any time without limitation."  (Doc. 682 (quoting 18 U.S.C. § 3281)). This is precisely where Defendants find themselves—facing an indictment for offenses punishable by death under § 924(j)(1)—and, therefore, not subject to any limitations period.

To be sure, § 924(j) "does not set forth a discrete crime" from § 924(c).  *Hargrove*, 558 F. App'x at 809 (quotation omitted).  Instead, "§ 924(c) is a lesser-included offense of § 924(j)."  *United States v. Wilson*, 579 F. App'x 338, 348 (6th Cir. 2014).  This does not mean, however, that a charge under § 924(j) is subject to the five-year statute of limitations applicable to § 924(c).  Rather, as several courts have concluded, § 924(j) "increases the punishment of § 924(c) *and disposes of the statute of limitations*."  *Hargrove*, 2013 WL 4787917, at *4 (emphasis added); *see also Judge v. United States*, No. 13-2896 (JEI), 2015 WL 4742380, at *9 (D.N.J. Aug. 11, 2015) ("[Petitioner] bases his argument on the assertion that 18 U.S.C. § 924(c) is subject to a five year statute of limitations, and his assertion that § 924(j) is merely a sentencing enhancement that cannot increase the statute of limitations.  Petitioner is incorrect."); *Dames*, 2007 WL 1032257, at *1 (holding that firearm murder prosecution under § 924(j) may be brought at any time regardless of when the underlying drug offense occurred).

This understanding of the interplay between § 924(c), § 924(j), and the federal statutes of limitation comports with other cases interpreting analogous provisions from the Controlled Substances Act.  For example, in a string of cases from the Southern District of New York, that court rejected the defendants' arguments that their prosecutions were time-barred under 21 U.S.C. § 848(e)(1)—which prohibits murder in connection with a drug conspiracy—merely because the underlying drug conspiracy would have been time-barred under § 841(b)(1)(A) if charged separately.  *See, e.g.*, *Soler v. United States*, Nos. 10 Civ. 4342(SAP), 05 Cr. 165(LAP), 2015 WL 4879170, at *22 n.16 (S.D.N.Y. Aug. 14, 2015) ("Regardless of whether the murder charge was brought more than five years after the end of the conspiracy, that charge is exempt from the statute of limitations that would be applicable to a straightforward section 841(b)(1)(A) count."); *United States v. Guerrero*, 882 F. Supp. 2d 463, 495 (S.D.N.Y. 2011) ("While [defendant] is correct that the five year statute of limitations on the narcotics offense had expired, there is no statute of limitation for drug-related intentional murders, the crimes for which [he] was charged."); *United States v. Martinez-Martinez*, No. 01 CR 307, 2001 WL 1287040, at *2 (S.D.N.Y. Oct. 24, 2011) (same).

Defendants do not point to a single case that found a murder prosecution under § 924(j) time-barred merely because the underlying offense on which that prosecution was based would have been time-barred if charged separately.  Instead, Defendants base their argument on a strained reading of § 924(c), which prohibits the use or possession of a firearm during and in relation to a crime of violence or drug trafficking crime "for which the person *may be prosecuted*" in federal court.  *See* 18 U.S.C. § 924(c)(1)(A) (emphasis added).  Defendants argue that since they no longer "may be prosecuted" in federal court for the underlying offenses due to the five-year statute of limitations from § 3282(a), their prosecution under § 924(j) fails as well.

20

Defendants' contention, which focuses solely on the temporal aspect of the operative phrase "may be prosecuted," misses the mark.  The phrase "any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States" means only that the underlying offense must be of the *type* or *category* proscribed by § 924(c), not that the underlying offense itself must be capable of prosecution in every case.  Indeed, the Sixth Circuit has held that a conviction under § 924(c) does not require a conviction for the underlying offense or, for that matter, that the government even bring charges on the underlying offense.  *United States v. Smith*, 182 F.3d 452, 458 (6th Cir. 1999).  Accordingly, Defendants' focus on the five-year statute of limitations for the underlying offenses is "misplaced."  *See United States v. Tolliver*, 730 F.3d 1216, 1225 (10th Cir. 2013) ("Because the government was not required to indict Defendant on the predicate mail fraud offenses, Defendant's focus on the running of the five-year statute of limitations for that offense is misplaced.").

Had Congress meant otherwise, it could have included a requirement in § 924(c) that the underlying offense be one "for which the person may be prosecuted in a court of the United States *at the time the offense under this section is punishable*," or some other limiting language to that effect.  *See Martinez-Martinez*, 2001 WL 1287040, at *2.  Congress opted not to impose such a requirement.  As such, there is no reason to believe that the phrase "may be prosecuted in a court of the United States" means anything other than a description of the category of offenses at issue.  *See id.*  This understanding makes sense given the legislative history surrounding § 924(c), especially the sponsor's desire to ensnare only *federal* felonies involving crimes of violence but not *state* felonies, so as to "avoid[] the burden on the prosecutor of proving a given firearm moved in interstate commerce in order to establish federal jurisdiction" in every case. *See United States v. Brown*, 58 F. Supp. 3d 115, 123 (D.D.C. 2014).

In sum, Defendants erroneously graft a temporal meaning onto a statutory provision aimed squarely at a categorical class of underlying offenses.  *See* 18 U.S.C. § 924(c)(1)(A).  Surely that is not what Congress intended when it established an enhanced sentencing regime and eliminated the statute of limitations for firearm murders that occur during and in relation to a crime of violence or a drug trafficking crime.  The Court therefore finds that the instant prosecutions for firearm murders under 18 U.S.C. § 924(j) are not time-barred, regardless of whether § 3282(a) precludes independent prosecution of the underlying offenses.

## IV.  CONCLUSION

For these reasons, Defendants' motions to dismiss in Case Numbers 2:14-cr-127 (Docs. 626, 630, 633, 634, 637, 662, 663, 665, and 674) and 2:15-cr-080 (Docs. 19, 20, 22, 23, and 25) are **DENIED**.  Defendants' motions to join in their co-defendants' motions to dismiss (Docs. 631, 638, 642, and 643) are **GRANTED but MOOT** to the extent they allege constitutional violations stemming from the Government's notices of intent to rely on evidence beyond the overt acts listed in the Superseding Indictment.

**IT IS SO ORDERED.**


          **___ s/ Algenon L. Marbley_____**
          **ALGENON L. MARBLEY**
          **UNITED STATES DISTRICT JUDGE**

**DATED:  September 1, 2015**