IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Case No. 2:15-CR-080 |
| Plaintiff, | : | Case No. 2:14-CR-127 |
| | : | |
| v. | : | Judge Algenon L. Marbley |
| | : | |
| ROBERT B. LEDBETTER, *et al.* | : | |
| | : | |
| Defendants. | : | |

**ORDER**

It stands to reason that in a criminal conspiracy case, many of the government's witnesses will be susceptible to impeachment on any number of grounds, including by evidence of their own criminal history, potential bias due to their desire to avoid criminal charges or stiffer sentences, or simple inconsistencies between their in-court testimony and prior statements made to law-enforcement officials. The Federal Rules of Evidence contemplate this type of impeachment evidence and, where they do not, case law fills the void. *See United States v. Abel*, 469 U.S. 45, 49-52 (1984); *United States v. Dimora*, 843 F. Supp. 2d 799, 844 (N.D. Ohio 2012).

It also stands to reason that, once a government witness has been impeached, the government may seek to rehabilitate that person's testimony through evidence of the witness's prior *consistent* statements. Here again, the Federal Rules of Evidence come into play. More specifically, Rule 801(d)(1)(B) permits the introduction of such prior consistent statements from a declarant-witness "to rebut an express or implied charge that the declarant recently fabricated [his or her testimony] or acted from a recent improper influence or motive in so testifying" or "to rehabilitate the declarant's credibility as a witness when attacked on another ground." Fed. R. Evid. 801(d)(1)(B)(i)-(ii).

1

This sprawling RICO-conspiracy case is no different.  Counsel for the defendants have impeached the credibility of several government witnesses by eliciting testimony about their prior criminal convictions, their potential bias stemming from a desire to avoid criminal charges or stiffer sentences, inconsistencies between their in-court testimony and their previous statements to law-enforcement officials, and the like.  On two separate occasions, the Government sought to rehabilitate the credibility of its witnesses by eliciting testimony from third parties regarding prior consistent statements that those witnesses made.  In one instance, the Court permitted the Government to do so under Rule 801(d)(1)(B)(i).  In another instance, the Court refused to permit the Government to do so under the same section *or* under a newly added portion of Rule 801—Rule 801(d)(1)(B)*(ii)*—which governs prior consistent statements used to rehabilitate the declarant's credibility "when attacked on another ground."

Because these issues continue to arise in this trial, and because the scope of the newly enacted Rule 801(d)(1)(B)(ii) remains somewhat of a mystery to courts and commentators, *see United States v. Kubini*, No. 11-14, 2015 WL 418220, at *9 (W.D. Pa. Feb. 2, 2015), the Court issues this written Order to expound on its trial rulings and to articulate the interplay between subsections (i) and (ii).

I. MICHAEL BOYD'S PRIOR CONSISTENT STATEMENTS WERE ADMISSIBLE.

A. Factual and Procedural Background

The Government called Latonia (Williams) Boyce as a witness during its case-in-chief. (*See* Minute Entry for Proceedings on Apr. 21, 2016).  Ms. Boyce had been married to Rodriccos Williams, one of the murder victims in this case, and she was present the night that four assailants entered her home and killed her husband.  Ms. Boyce testified regarding the incidents leading up to, and including, her husband's murder.

During her direct examination, the Government sought to elicit testimony regarding statements that Ms. Boyce's former boss, Michael Boyd, made to her regarding threats that one of the defendants made toward Ms. Boyce's husband shortly before his murder. Several defendants objected on the ground that Mr. Boyd's statements constituted impermissible hearsay. The Government countered that, under Rule 801(d)(1)(B)(i), the statements from Mr. Boyd were *not* hearsay because they were prior consistent statements from a declarant-witness offered to rebut a charge of recent fabrication. The Government also argued that, under the newly enacted Rule 801(d)(1)(B)(ii), the Court should permit the Government to rehabilitate Mr. Boyd's testimony through his prior consistent statements to Ms. Boyce because his trial testimony had been "attacked on another ground." The Government did not, however, specify how else Mr. Boyd's credibility had been attacked.

After hearing oral argument from both sides and considering this evidentiary dispute over the noontime recess, the Court allowed the Government to elicit the testimony from Ms. Boyce *solely* under Rule 801(d)(1)(B)(i), which governs prior consistent statements used to rebut a charge of recent fabrication or improper influence.

### B. Legal Standards

Rule 801(d)(1)(B)(i) provides that a statement is <u>not</u> hearsay so long as the following conditions are met: (1) the declarant (Mr. Boyd) testifies and is subject to cross-examination about a prior statement; (2) the prior statement is consistent with the declarant's in-court testimony; (3) the prior statement is offered to rebut an express or implied charge that the declarant recently fabricated his testimony or acted from a recent improper influence or motive in so testifying; and (4) the prior statement was made before any supposed motive to lie arose. *United States v. Trujillo*, 376 F.3d 593, 611 (6th Cir. 2004) (citations omitted).

### C. Analysis

Here, the Court found that all of the requirements from Rule 801(d)(1)(B)(i) were met. Accordingly, the Court permitted the Government to elicit testimony from Ms. Boyce regarding prior consistent statements that Mr. Boyd made to her about defendant Robert B. Ledbetter.[1]

*First*, the declarant, Michael Boyd, testified and was subject to cross-examination about his prior statements to Ms. Boyce. (*See* Minute Entry for Proceedings on Apr. 13, 2016). Indeed, multiple defense counsel cross-examined Mr. Boyd about the statements he made to Ms. Boyce concerning Ledbetter's visit to the Allure Nightclub during the fall of 2007 and the threats that he made toward Rodriccos Williams while at that nightclub.

*Second*, the prior statements to which Ms. Boyce testified were consistent with Mr. Boyd's earlier testimony regarding Ledbetter's animosity toward Rodriccos Williams because of Williams's intimate relationship with Ledbetter's ex-girlfriend, Ms. Boyce. Ms. Boyce testified that she spoke with Mr. Boyd shortly after her husband's murder and, according to Mr. Boyd, Ledbetter came to Mr. Boyd's strip club one evening and was visibly and vocally upset with Rodriccos Williams for dating and marrying his ex-girlfriend. Ms. Boyce also testified that, according to Mr. Boyd, Ledbetter made loose threats toward Rodriccos Williams and used reckless language that evening regarding what might happen to him. The Court finds that these statements, which were made nearly nine years before Mr. Boyd testified, were entirely consistent with his testimony in this trial.

---

[1] The fact that the Government sought to present evidence of Mr. Boyd's prior consistent statements through another witness—in this instance, Ms. Boyce—rather than from Mr. Boyd himself "is of no consequence." *Trujillo*, 376 F.3d at 611 n.10; *United States v. Hebeka*, 25 F.3d 287, 292 (6th Cir. 1994) ("Where, as here, the requirements of the rule are satisfied, the admission of a prior consistent statement through a third party on an important matter in dispute at trial should be permitted."); *see also* Kenneth W. Graham, Jr. & Michael H. Graham, 30 B *Federal Practice and Procedure*: Evidence § 7012 (2014 ed.) ("Where admissible, the prior consistent statement may be testified to by either the witness himself or any other person with knowledge of the statement.").

*Third*, the Government elicited the prior statements to rebut an express or implied charge that Mr. Boyd recently fabricated his testimony or acted from a recent improper influence or motive in so testifying. Ledbetter's attorney cross-examined Mr. Boyd at length about possible improper inducements to testify, including his desire to have his criminal record expunged, to get off probation, and to obtain relocation at the Government's expense. This line of questioning certainly implied that Mr. Boyd may have fabricated his testimony against Ledbetter or, at the very least, acted from a recent improper influence or motive in so testifying. *See, e.g.*, *United States v. Montague*, 958 F.2d 1094, 1096 (D.C. Cir. 1992) ("In short, when a defense attorney pursues a line of questioning designed to impugn the motives of a witness, she assumes the risk that the government will introduce rebuttal evidence under Rule 801(d)(1)(B)."); *United States v. Hamilton*, 689 F.2d 1262, 1273 (6th Cir. 1982) (noting that an implication that a witness "was influenced by his deal with the government" opens the door to prior consistent statements under Rule 801(d)(1)(B)).

*Finally*, Mr. Boyd's prior consistent statements readily preceded the moment when any improper influence or motive to testify arose. As his cross-examination revealed, Mr. Boyd did not even speak to law enforcement officials until two years after Rodriccos Williams was murdered, which occurred on November 3, 2007. Mr. Boyd's statements to Ms. Boyce, in contrast, occurred shortly after the murder—well before he ever spoke to authorities investigating the crime and even further back in time than when he began bargaining with the prosecutors in this case over any leniency or relocation in exchange for his testimony. Put simply, Mr. Boyd made the statements well before any alleged improper influence or motive to testify arose. *See United States v. Argo*, 23 F. App'x 302, 308-09 (6th Cir. 2001) (holding that statements made before motive to curry favor with law enforcement arose were admissible).

5

Because Mr. Boyd's prior consistent statements satisfied the requirements from Rule 801(d)(1)(B)(i), his statements were "admissible as substantive evidence, [and] not just to rebut an attack on [his] credibility." *Tome v. United States*, 513 U.S. 150, 157 (1995). Accordingly, the Court declined to issue a limiting instruction, as defense counsel had requested, which would have cabined the use of Mr. Boyd's prior consistent statements to assessments of his credibility. *Compare, e.g.*, *United States v. Beltran*, 165 F.3d 1266, 1270 (9th Cir. 1999) (noting that a limiting instruction placed on proper Rule 801(d)(1)(B) statements "is incorrect on the law"), *and id.* at 1272 (Kozinski, J., concurring) ("We all agree this instruction is incorrect: A prior consistent statement that meets the requirements of Rule 801(d)(1)(B) is admissible as substantive evidence and not solely for the more limited purpose of rehabilitating a witness." (quotation omitted)), *with United States v. Vargo*, 185 F. App'x 111, 114 (2d Cir. 2006) (agreeing that, where prior consistent statements "were introduced solely for the purposes of rehabilitation, the court should have given a limiting instruction").[2]

## II. ASHLEY WARD'S PRIOR CONSISTENT STATEMENTS WERE INADMISSIBLE.

### A. Factual and Procedural Background

The Government also called Ashley Ward to testify during its case-in-chief. (*See* Minute Entry for Proceedings on Apr. 25, 2016). Ms. Ward had dated a now deceased co-defendant, Rastaman A. Wilson, from 2007 to 2008, and he allegedly told her critical details about another murder at issue in this case: the August 19, 2007 murder of Donathan Moon. Ms. Ward testified about her rocky relationship with Wilson and about statements that he made to her concerning Moon's murder, including who else participated in it.

---

[2] Because Mr. Boyd's prior consistent statements were admissible to rebut a charge of recent fabrication, the Court did not rule on the Government's alternative argument under Rule 801(d)(1)(B)(ii), which governs prior consistent statements used to rehabilitate the credibility of a witness "when attacked on another ground." Fed. R. Evid. 801(d)(1)(B)(ii).

6

On cross-examination, defense counsel sought to impeach Ms. Ward by eliciting testimony showing that she had recently fabricated her testimony or, at the very least, had a recent improper motive in so testifying.  In short, defense counsel showed that, although Ms. Ward allegedly learned details about the Moon homicide in August 2007, she failed to alert authorities until four years later—after her new boyfriend was arrested on drug charges in Delaware County.  Defense counsel showed that Ms. Ward only shared whatever information she allegedly knew about the Moon homicide to curry favor with authorities in Delaware County in exchange for leniency for her new boyfriend.  That is, she bargained away information about a murder solely to gain favorable treatment from law-enforcement officials for a loved one.

Four days after Ms. Ward testified, the Government called Captain Chris Barbuto of the Licking County Sheriff's Office to testify.  (*See* Minute Entry for Proceedings on Apr. 28, 2016).  Captain Barbuto was the lead investigator for the Donathan Moon murder, and he testified that his investigation went cold for several years until Ashley Ward came forward, via law-enforcement officials from Delaware County, with information concerning the murder in November 2011.  At that point in Captain Barbuto's testimony, the Government sought to introduce prior consistent statements that Ms. Ward made to him throughout his investigation.  Several defendants objected on the ground that Ms. Ward's out-of-court statements constituted impermissible hearsay.  The Government countered that her statements were not hearsay and were admissible to rebut defense counsel's charge that she fabricated her testimony or acted from an improper motive in so testifying to obtain leniency for her new boyfriend *and* to rehabilitate her credibility after being attacked on another ground.  *See* Fed. R. Evid. 801(d)(1)(B)(i)-(ii).  The Government again failed to specify how else defense counsel attacked Ms. Ward's credibility.

The Court then heard argument from both sides and expressed some reluctance over admitting Ms. Ward's prior consistent statements under Rule 801(d)(1)(B). The Government voluntarily offered to sidestep the issue by avoiding any further testimony from Captain Barbuto concerning the specifics of what Ms. Ward told him in late 2011.

### B. Legal Standards

Rule 801(d)(1)(B)(i) provides that a statement is <u>not</u> hearsay so long as the following conditions are met: (1) the declarant (Ms. Ward) testifies and is subject to cross-examination about a prior statement; (2) the prior statement is consistent with the declarant's in-court testimony; (3) the prior statement is offered to rebut an express or implied charge that the declarant recently fabricated her testimony or acted from a recent improper influence or motive in so testifying; and (4) the prior statement was made before any supposed motive to lie arose. *Trujillo*, 376 F.3d at 611 (6th Cir. 2004). The final requirement is key. Absent a finding that the improper motive to testify arose *after* the prior consistent statement, the statement remains hearsay and cannot be admitted under Rule 801(d)(1)(B)(i). *Id.*; *United States v. Esparza*, 291 F.3d 1052, 1055 (8th Cir. 2002) (finding testimony made at time of arrest inadmissible because "Esparza had the same motive to lie at the time of his statement to the officer as he did at trial, and so his statement was not admissible to rebut a charge of recent fabrication").

Before December 1, 2014, a prior consistent statement could *only* be admitted for the truth of the matter asserted to rebut a charge of recent fabrication. Fed. R. Evid. 801(d)(1)(B) (2014). Effective December 1, 2014, however, subparagraph (B) was split into two clauses, including the new clause (ii), which allows prior consistent statements to be admitted for the truth of the matter asserted if offered "to rehabilitate the declarant's credibility as a witness when attacked on *another* ground." Fed. R. Evid. 801(d)(1)(B) (2015) (emphasis added).

8

According to the committee notes on the most recent amendment, clause (ii) addresses prior consistent statement offered for reasons other than to rebut a charge of recent fabrication, such as "consistent statements that are probative to explain what otherwise appears to be an inconsistency in the witness's testimony" and "consistent statements that would be probative to rebut a charge of faulty memory." Fed. R. Evid. 801, Advisory Committee Notes to 2014 Amendments. According to its drafters, "[t]he intent of the amendment is to extend substantive effect to consistent statements that rebut other attacks on a witness—such as charges of inconsistency or faulty memory." *Id.*; *see also Berry v. Beauvais*, No. 12-cv-26470-WJM-CBS, 2015 WL 5244892, at *2 (D. Colo. Sept. 9, 2015) ("The committee saw that the Rule, as originally written, left these sorts of prior consistent statements potentially admissible only for the limited purpose of rehabilitating a witness's credibility, not as substantive evidence. Clause (ii) clarifies that such statements may be treated as substantive evidence [too]." (quotation omitted)).

That said, "[a]s before, prior consistent statements under the amendment may be brought before the factfinder only if they properly rehabilitate a witness whose credibility has been attacked." *Berry*, 2015 WL 5244892, at *2 (quotation omitted). Critically, "[t]he amendment retains the requirement set forth [by the Supreme Court] that under Rule 801(d)(1)(B), a consistent statement offered to rebut a charge of recent fabrication [or] improper influence or motive must have been made before the alleged fabrication or improper influence or motive arose." Fed. R. Evid. 801, Advisory Committee Notes to 2014 Amendments. Thus, the first step in any analysis under the new rule is determining "precisely what sort of impeachment" the proponent of the evidence expects or receives "that would open the door to admitting" a prior consistent statement for the truth of the matter asserted. *Berry*, 2015 WL 5244892, at *3.

9

### C. Analysis

Ms. Ward's testimony was impeached solely on the ground of recent fabrication or improper influence or motive in so testifying.  Defense counsel sought to show that she cooperated with authorities to obtain favorable treatment for her boyfriend, who had just been arrested in Delaware County.  The logical inference to be drawn from her cross-examination was that, but for her boyfriend's legal troubles in 2011, Ms. Ward never would have told authorities about Rastaman Wilson's confession to the Moon murder and never would have testified against the remaining defendants in this trial.

Thus, the only question is whether Ms. Ward's prior consistent statements satisfy Rule 801(d)(1)(B)(i).  Here, the Court finds that Ms. Ward's out-of-court statements regarding the Donathan Moon murder do *not* satisfy the rule because she made them to law-enforcement officials only *after* her motive to lie arose.  When a declarant-witness or, in this instance, their loved one is arrested and *then* the witness begins cooperating with authorities by sharing information with them—the motivation to lie arises before the "prior consistent statement" in question is made.  *See Trujillo*, 376 F.3d at 611; *see also United States v. Stuart*, 507 F.3d 391, 397 (6th Cir. 2007) ("An arrested informant . . . it is true, may have a motivation to implicate and pass the blame to another, and the use of such statements *at trial* may pose hearsay problems when offered by the non-declarant." (quotation and citations omitted)); *United States v. Snell*, No. 08-299-01, 2009 WL 650379, at *3 (E.D. Pa. Mar. 10, 2009) (granting government's motion to exclude prior consistent statements because "Defendant's motive to lie arose upon his apprehension by police . . . . Defendant's prior testimony at the bail hearing concerning his version of events . . . cannot be used . . . under Rule 801(d)(1)(B)").  Accordingly, the Court was correct to express its reluctance to admit Ms. Ward's statements.  *Trujuillo*, 376 F.3d at 611.

Because the defendants impeached Ms. Ward solely on the ground of recent fabrication, Rule 801(d)(1)(B)(ii)—which is written in the disjunctive and refers only to prior consistent statements offered "to rehabilitate the declarant's credibility as a witness when attacked *on another ground*"—does not apply.  *See* Fed. R. Evid. 801(d)(1)(B)(ii) (emphasis added).  The amended rule may have broadened the scope of prior consistent statements that may be offered for the truth of the matter asserted, but it "does not change the traditional and well-accepted limits on bringing prior consistent statements before the factfinder for credibility purposes." *Kubini*, 2015 WL 418220, at *9 (quoting Fed. R. Evid. 801, Advisory Committee Notes to 2014 Amendments).  Where, as here, defense counsel does not open the door to further rehabilitation through use of "other attacks on a witness—such as the charges of inconsistency or faulty memory," Rule 801(d)(1)(B)(ii) has no role to play.  *See id.* (quotation omitted).

With no avenue for admissibility of Ms. Ward's prior consistent statements under either Rule 801(d)(1)(B)(i) *or* (d)(1)(B)(ii), the Government correctly avoided eliciting testimony about the specifics of her out-of-court statements to prove the truth of the matter asserted.  Instead, the Government correctly limited Captain Barbuto's testimony regarding Ms. Ward's statements to show the effect that they had on his investigation of the Donathan Moon murder—*i.e.*, to show what steps he took after speaking to Ms. Ward in 2011.  The Court endorsed that approach during Captain Barbuto's testimony and confirms that approach now.

### III. CONCLUSION

For these reasons, Latonia Boyce's testimony concerning Michael Boyd's prior consistent statements was admissible for the truth of the matter asserted, but Captain Barbuto's anticipated (but never received) testimony about Ashley Ward's prior consistent statements was not.

11

**IT IS SO ORDERED.**

                                                                                  _s/ Algenon L. Marbley_
                                                                        **ALGENON L. MARBLEY**
                                                                        **UNITED STATES DISTRICT JUDGE**

**DATED: May 4, 2016**